DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

UNITED STATES OF AMERICA,    )
                             )
            Plaintiff,       )
                             )
         v.                  )    Criminal No. 2017-34
                             )
NILDA MORTON,                )
                             )
            Defendant.       )
_____)

**ATTORNEYS:**

**Gretchen Shappert, United States Attorney**
**Delia L. Smith, AUSA**
United States Attorney's Office
St. Thomas, U.S.V.I.
      *For the United States of America,*

**A. Jeffrey Weiss, Esq.**
A.J. Weiss & Associates
St. Thomas, U.S.V.I.
      *For Nilda Morton.*

## ORDER

**GÓMEZ, J.**

     Before the Court are Nilda Morton's motion for a judgment of acquittal, or in the alternative, a new trial, pursuant to Federal Rules of Criminal Procedure 29 and 33.

### I.    FACTUAL AND PROCEDURAL HISTORY

     To fully appreciate the factual and procedural circumstances of this case, a brief review of three earlier cases that were adjudicated in this Court is in order.

Vernon Fagan ("Fagan") was convicted in Criminal Case No. 5-76 ("*Redball I*"[1]) of conspiracy to distribute a controlled substance and importation of controlled substances. He was also convicted in Criminal Case No. 6-80 ("*Redball II*") of conspiracy to distribute a controlled substance. In *Redball I*, Fagan was sentenced to a term of imprisonment of eighty months and a term of supervised release of four years on each of his two counts of conviction, to be served concurrent to each other and to the sentence imposed in *Redball II*. In *Redball II*, Fagan was sentenced to a term of imprisonment of 168 months and a term of supervised release of five years.

In November, 2016, a Grand Jury in St. Thomas, Virgin Islands, returned a ten-count superseding indictment in Criminal Case No. 16-39 (the "Morton drug trafficking case") charging Nilda Morton ("Morton") with multiple violations of drug trafficking laws. Morton was convicted on seven of the ten counts on January 23, 2017.

On April 27, 2017, the Court summoned Fagan to appear before the Court because of alleged violations of the terms of his supervised release in *Redball I* and *Redball II*. Fagan was

_____

[1] The terms *Redball I* and *Redball II* refer to cases, each of which involved multiple defendants who were charged with wide ranging drug trafficking offenses. Redball refers to a grocery store in St. Thomas, Virgin Islands, around which some defendants congregated.

alleged to have attempted to facilitate the collection of a drug debt in or about June and July, 2016. The drug debt, which exceeded $100,000, was owed to Nilda Morton.

On August 10, 2017, the Court held a consolidated supervised release revocation hearing in *Redball I* and *Redball II*. At that hearing, the United States called Morton as a witness. Morton attempted to invoke her Fifth Amendment right against self-incrimination and refused to answer the United States's questions.

In light of Morton's invocation of the Fifth Amendment, the Court *sua sponte* appointed attorney George Marshall Miller ("Attorney Miller") to represent Morton during the hearing. The Court permitted Morton to consult privately with Attorney Miller.[2] After Attorney Miller consulted privately with Morton, he confirmed that he had sufficient time to advise Morton regarding her rights and obligations. Thereafter, the United States resumed questioning Morton. Again, Morton attempted to invoke her Fifth Amendment right against self-incrimination and refused to answer the United States's questions.

---

[2] The Court also arranged for Attorney Juan Matos de Juan to be available to confer by phone with Morton and Attorney Miller. Attorney Matos de Juan represented Morton in the Morton drug trafficking case.

The Court found that Morton's invocation of the Fifth
Amendment was inappropriate, ordered Morton to answer the
questions of the United States, and warned Morton that a refusal
to do so could result in her being charged with criminal
contempt. On nine separate occasions, the Court had exchanges
with Morton substantially similar to the following:

> THE COURT: Ms. Morton, the Court doesn't find that your
> invocation of the Fifth is appropriate under the
> circumstances, so I'm directing you to answer that
> question.
>
> THE WITNESS: I plead the Fifth, Your Honor.
>
> THE COURT: Do you wish to consult with counsel?
>
> THE WITNESS: No, Your Honor.
>
> THE COURT: You understand that the Court, at a show cause
> hearing, could find you guilty of criminal contempt, and
> if it does so you could be sentenced in a bench trial up
> to six months, and a jury trial to a period much greater
> than that? Do you understand that?
>
> THE WITNESS: Yes, Your Honor.
>
> THE COURT: That would be in addition to any other
> sentence that you have. Do you understand that?
>
> THE WITNESS: Yes, Your Honor.
>
> THE COURT: And with that understanding, is it still your
> intention to plead the Fifth?
>
> THE WITNESS: Yes, Your Honor.

*See* Revocation of Supervised Release Hr'g Tr. 39:7-40:2, *United
States v. Fagan*, Criminal No. 5-76 (D.V.I. Feb. 12, 2019), ECF

No. 1149; *see also id.* at 17:23-18:16; 21:11-22; 22:16-23:15;

30:15-31:2; 31:23-32:9; 34:25-35:10; 35:24-36:9; 37:25-38:12.

After consulting with her counsel, Morton continued her refusal

to answer the questions of the Untied States.

Thereafter, the Court advised Morton that it would hold a

trial to determine whether she committed criminal contempt:

> THE COURT: Okay. Ms. Morton, I want to advise you and
> give you notice that on September 20th there will be a
> trial to determine whether you have committed criminal
> contempt. . . . I want to give you an opportunity to
> prepare your defense. The facts to the criminal contempt
> are those that I observed in court during the course of
> your testimony. The Court made findings on a number of
> occasions to very specific questions. The Court found
> your invocation of the Fifth Amendment to be
> inappropriate. The Court directed you specifically on
> multiple occasions to answer those several questions,
> advised you of the exposure, and the Court observed that
> you refused to obey the Court's directive. Those are the
> essential facts constituting the charge, criminal
> contempt, for which you will answer on September 20th in
> this court, beginning at 9:00 a.m.

*Id.* at 41:19-22; 42:2-15. The Court appointed Attorney Miller to

represent Morton for those proceedings.

On August 11, 2017, the United States filed an Information

charging Morton with one count of criminal contempt in violation

of 18 U.S.C. § 401(3). Morton was arraigned on the Information

that day. The Court appointed Attorney Juan Matos de Juan as

Morton's counsel. At the same time, the Court relieved Attorney

Miller from his representation of Morton. Thereafter, Attorney

Matos de Juan moved to withdraw as Morton's counsel. The Court

relieved Attorney Matos de Juan and appointed Attorney Jeffrey

Weiss as Morton's counsel.

On April 12, 2018, the Grand Jury returned an Indictment

charging Morton with one count of criminal contempt in violation

of 18 U.S.C. § 401(3).

On April 30, 2018, this matter went before a jury for

trial. At the trial, the Government introduced those portions of

the transcript from the August 10, 2017, revocation hearing that

contained Morton's testimony. Specifically, the portion of that

transcript introduced contained each exchange between the Court

and Morton in which the Court (1) advised Morton that her

invocation of the Fifth Amendment was improper, (2) ordered her

to answer, and (3) advised her that she could be found in

criminal contempt and further incarcerated if she failed to obey

the Court's order to answer. Additionally, Morton testified that

the Court repeatedly advised her that she could be found guilty

of criminal contempt if she disobeyed a court order without good

cause. *See id.* at 189:15-24. Morton also testified that she

refused to answer questions, notwithstanding the Court's

direction that she do so, because she did not understand the

Court's directive.

Morton petitioned the court to allow Attorney Miller to

testify that he advised Morton not to answer the Government's

questions at the August 10, 2017, revocation hearing. The Court found that such testimony would be impermissible because such a defense in these circumstances was legally invalid. Consequently, the Court did not permit Attorney Miller to testify for such a purpose. Similarly, the Court did not permit Morton to testify that Attorney Miller advised her not to answer the Government's questions at the August 10, 2017, revocation hearing. At the conclusion of the trial, the jury found Morton guilty of contempt of court.

On May 10, 2018, Morton requested an extension of time to file motions pursuant to Federal Rule of Criminal Procedure 29 ("Rule 29") and Federal Rule of Criminal Procedure 33 ("Rule 33") because she had not yet received a copy of the April 30, 2018, trial transcript. On September 4, 2018, the official transcript for the April 30, 2018, trial was filed on the docket. On September 12, 2018, Morton again requested an extension of time to file her Rule 29 and Rule 33 motions. On September 14, 2018, the Court granted Morton's request for an extension of time--extending the deadline to September 26, 2018.

On September 26, 2018, Morton filed her Rule 29 and Rule 33 motions for a judgment of acquittal, or in the alternative, a new trial.

On October 17, 2018, the United States requested an extension of time to respond to Morton's Rule 29 and Rule 33 motions. The Court granted the United States's motion--extending the deadline to November 16, 2018. On November 16, 2018, the United States again requested an extension of time to respond. The Court granted the United States's motion--extending the deadline to November 26, 2018. On November 26, 2018, the United States filed its opposition to Morton's Rule 29 and Rule 33 motions.

## II. DISCUSSION

### A. Fed. R. Crim. P. 29

A judgment of acquittal is appropriate under Rule 29 if, after reviewing the record in a light most favorable to the prosecution, the Court determines that no rational jury could find proof of guilt beyond a reasonable doubt. *United States v. Bobb*, 471 F.3d 491, 494 (3d Cir. 2006); *see also United States v. Smith*, 294 F.3d 473, 476 (3d Cir. 2002) (district court must " 'review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt based

on the available evidence.'") (quoting *United States v. Wolfe*,
245 F.3d 257, 262 (3d Cir. 2001)).

A finding that there is insufficient evidence to support a
conviction should be "'confined to cases where the prosecution's
failure is clear.'" *Smith*, 294 F.3d at 477 (quoting *United
States v. Leon*, 739 F.2d 885, 891 (3d Cir. 1984)). "Courts must
be ever vigilant in the context of [Rule] 29 not to usurp the
role of the jury by weighing credibility and assigning weight to
the evidence, or by substituting its judgment for that of the
jury." *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005)
(citations omitted); *see also United States v. Ashfield*, 735
F.2d 101, 106 (3d Cir. 1984) ("Our task is not to decide what we
would conclude had we been the finders of fact; instead, we are
limited to determining whether the conclusion chosen by the fact
finders was permissible.").

The government may sustain its burden entirely through
circumstantial evidence. *Bobb*, 471 F.3d at 494; *see also United
States v. Wexler*, 838 F.2d 88, 90 (3d Cir. 1988). A motion for a
judgment of acquittal should be granted when there is a "total
absence of evidence that [the] defendant had any connection"
with the crimes alleged and proved. *United States v. Darrell*,
629 F.2d 1089, 1091 (5th Cir. 1980) (conviction reversed with
directions to enter judgment of acquittal in mail fraud case,

noting there was little Fifth Circuit precedent saying what

evidence would permit an inference of the defendant's identity).

## B. Fed. R. Crim. P. 33

Under Rule 33, the Court may "vacate any judgment and grant

a new trial if the interest of justice so requires." Fed. R.

Crim. P. 33(a). When deciding a Rule 33 motion for a new trial,

the Court is provided somewhat more discretion than what is

afforded under Rule 29. Under Rule 33, the Court may grant a new

trial "in the interest of justice." *United States v. Charles*,

949 F. Supp. 365, 368, 35 V.I. 306 (D.V.I. 1996). In assessing

such "interest," the court may weigh the evidence and

credibility of witnesses. *United States v. Bevans*, 728 F. Supp.

340, 343 (E.D. Pa. 1990), *aff'd*, 914 F.2d 244 (3d Cir. 1990). If

the Court determines that there has been a miscarriage of

justice, the court may order a new trial. *Id.* "The burden is on

the defendant to show that a new trial ought to be granted. Any

error of sufficient magnitude to require reversal on appeal is

an adequate ground for granting a new trial." *United States v.

Clovis*, Crim. No. 94-11, 1996 U.S. Dist. LEXIS 20808, at *5

(D.V.I. Feb. 12, 1996).

A defendant is required to show there is newly discovered

evidence or that there was reversible error at his trial in

order to be granted a new trial pursuant to Rule 33. "[A]

district court 'can order a new trial on the ground that the jury's verdict is contrary to the weight of the evidence only if it believes that there is a serious danger that a miscarriage of justice has occurred — that is, that an innocent person has been convicted.'" *United States v. Davis*, 397 F.3d 173, 181 (3d Cir. 2005) (quoting *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002)).

## III. ANALYSIS

Morton requests a judgment of acquittal pursuant to Rule 29, or in the alternative, a new trial pursuant to Rule 33. Morton argues that the Court's refusal to allow Attorney Miller to testify regarding his advice at the August 10, 2017, revocation hearing denied Morton her Sixth Amendment right to present witnesses at trial. Morton also argues that the Court was required to consider civil contempt before resorting to criminal contempt. Additionally, Morton argues that the Court incorrectly stated that Morton could opt for a bench trial for which the maximum additional sentence would be six months. Finally, Morton argues that improper argument and questioning by the United States tainted the trial.

### A. Advice of Counsel

"The three elements of criminal contempt are (1) a lawful and reasonably specific order that (2) the defendant has

violated (3) willfully." *Romero v. Drummond Co.*, 480 F.3d 1234, 1242–43 (11th Cir. 2007) (citing 18 U.S.C. § 401(3)); *see also United States v. Rapone*, 131 F.3d 188, 192 (D.C. Cir. 1997) ("[A] conviction for criminal contempt for violation of a court order requires that: (1) the order must be clear and reasonably specific; (2) the defendant must have violated the order; and (3) the violation must have been willful.").

The mere failure to comply with a court's order, without more, is not sufficient to sustain a conviction for contempt because "the crime of criminal contempt requires a specific intent to consciously disregard an order of the court." *Waste Conversion*, 893 F.2d at 610. Indeed, because criminal contempt requires that a defendant's violation be willful, "good-faith compliance is a defense to criminal contempt." *In re Kendall*, 712 F.3d 814, 830–31 (3d Cir. 2013). Thus, "if the defendant's alleged disobedience is consistent with a reasonable interpretation of the court's order and there is no other evidence of willfulness," the defendant may not be convicted of criminal contempt. *See id.* (alterations omitted) (quoting *Doral Produce Corp. v. Paul Steinberg Assoc.,* 347 F.3d 36, 38–39(3d Cir. 2003)).

Morton argues that her continuing refusal to answer questions during the August 10, 2017, revocation hearing was

informed by the advice of Attorney Miller. As such, she asserts that Attorney Miller's testimony was relevant to defend against a government claim that she acted willfully.

In *In re Eskay*, 122 F.2d 819 (3d Cir. 1941), the Third Circuit examined the differences between civil and criminal contempt. *Id.* at 822. The Third Circuit noted that the distinction between the two types of contempt was important because it determined, among other things, "the availability of certain defenses." *Id.* In a related footnote, the Third Circuit stated that "[i]t is a good defense to an attachment for criminal, but not civil contempt that the contemnor acted in good faith upon advice of counsel." *Id.* at 822 n.17. The Third Circuit has not directly addressed this issue since.

Significantly, the Third Circuit does not appear to have embraced the position suggested in *dicta* in *In re Eskay*. In *United States v. Drum*, 569 F. Supp. 605 (M.D. Pa. 1983), the defendant was convicted of criminal contempt for failing to answer questions at a grand jury proceeding in spite of a court order to do so. *Id.* at 607-08. At trial, the defendant asserted that he believed his plea agreement contained a provision exempting him from giving that testimony. *Id.* at 610-11. The district court rejected this argument, noting that "reliance upon the advice of counsel [is not] a valid defense for not

obeying a court order." *Id.* at 612 (citations omitted). On

appeal, the Third Circuit affirmed without an opinion. *See*

*Appeal of Drum*, 735 F.2d 1348 (3d Cir. 1984); *In re Grand Jury*

*No. 81-252*, 735 F.2d 1349 (3d Cir. 1984).

In circumstances such as those presented here, several

United States Courts of Appeal have concluded that good-faith

reliance on an attorney's advice is not a defense to criminal

contempt. *See United States v. Remini*, 967 F.2d 754 (2d Cir.

1992); *United States v. Seavers*, 472 F.2d 607 (6th Cir. 1973);

*United States v. Di Mauro*, 441 F.2d 428 (8th Cir. 1971); *United*

*States v. Snyder*, 428 F.2d 520, 522 (9th Cir. 1970). In those

instances in which a good-faith defense has been permitted, the

Court is not aware of any court that permits the defense where

an attorney advised the defendant to disobey a clear court

order. *See, e.g., United States v. Myers*, 302 F. App'x 201, 205

(4th Cir. 2008) ("[The defendant's] reliance on counsel's advice

to fail to appear as ordered, does not negate the willfulness

element of the contempt offense."); *United States v. Underwood*,

880 F.2d 612, 618-19 (1st Cir. 1989) (rejecting good-faith

reliance defense where defendant claimed "he relied in good

faith upon his counsel's advice that the subpoena was unlawful

and that he must refuse to testify in order to preserve the

issue for appeal"); *United States v. Armstrong*, 781 F.2d 700,

706 (9th Cir. 1986) ("Although a defendant's good faith belief
that he is complying with the order of the court may prevent a
finding of willfulness, good faith reliance on the advice of
counsel to disobey a court order will not."). Rather, the
defense is permitted only insofar as the attorney advised the
defendant to follow a course of action that could reasonably be
seen as in compliance with the Court's order. *See Armstrong*, 781
F.2d at 706 ("[A] defendant's good faith belief that he is
complying with the order of the court may prevent a finding of
willfulness"). This view is consistent with the Third Circuit's
*dicta* in *In re Eskay*, 122 F.2d 819 (3d Cir. 1941)[3] and the
circumstances presented in *United States v. Drum*, 569 F. Supp.
605 (M.D. Pa. 1983).

Morton cites *United States v. Myers*, No. 5:06CR55, 2008
U.S. Dist. LEXIS 43981 (N.D.W. Va. June 3, 2008) and several
other appellate and district court cases from other circuits for
the proposition that relying on good faith advice of counsel is

---

[3] Indeed, a close review of *In re Eskay* reveals citations to two patent
infringement cases which each involved good faith reliance upon counsel's
advice that what the defendant did was not a violation of the court's order.
*See Proudfit Loose Leaf Co. v. Kalamazoo Loose Leaf Binder Co.*, 230 F. 120,
132 (6th Cir. 1915) ("A mere violation of an injunction, however, if in a
good-faith belief that the order is being properly interpreted, and without
any intention to disobey or set at naught the order of the court, is not a
criminal contempt, even though actuated by a desire to find a lawful means
[of] avoiding infringement."); *Matthews v. Spangenberg*, 15 F. 813, 814
(C.C.S.D.N.Y. 1883). Here, the advice, if given at all, was to disobey the
court's order.

a defense in a criminal contempt proceeding. However, the *Myers* court stated, "as a matter of law, that although a defendant's good faith belief that he or she is complying with a lawful court order may preclude a finding of willfulness, good faith reliance on the advice of counsel to disobey an order will not." *Id*. at *7.

Contrary to Morton's arguments, willfulness does not require that a defendant think her actions are illegal. Rather, willfulness requires only that she "knows or should reasonably be aware that [s]he is disregarding [an order of the court]." *In re Kendall*, 712 F.3d 814, 830-31 (3d Cir. 2013) (citations and internal quotation marks omitted). Good faith compliance is a defense to criminal contempt that occurs when "the defendant's alleged disobedience is consistent with a reasonable interpretation of the court's order . . . and there is no other evidence of willfulness." *Id*. at 831 (citations and internal quotation marks omitted); *see also United States v. Ray*, 683 F.2d 1116, 1126 (7th Cir. 1982) (explaining that "a defense of good faith compliance arises when a defendant has not refused to comply with the court order he is charged with violating, but has failed to comply because of the indefiniteness of the order or some other inability to do so") (citations omitted).

In this case, Morton was not unaware of the Court's order. Morton knew of the Court's order and chose to disobey it. There is no reasonable interpretation of a court order to testify with which Morton's conduct could be consistent. Consequently, that Morton thought it was legally permissible to disobey the Court's order due to advice of her counsel is immaterial to a charge of criminal contempt. As such, the Court did not deprive Morton of her Sixth Amendment right to present witnesses in her favor when it did not allow Attorney Miller to testify as to the advice he provided at the August 10, 2017, revocation hearing. *See United States v. Valenzuela-Bernal*, 458 U.S. 858, 867, 102 S. Ct. 3440, 3446 (1982) ("Indeed, the Sixth Amendment does not by its terms grant to a criminal defendant the right to secure the attendance and testimony of any and all witnesses: it guarantees him 'compulsory process for obtaining *witnesses in his favor*.'") (citations omitted); *cf. Washington v. Texas*, 388 U.S. 14, 23 (1967) (holding that the defendant was denied his Sixth Amendment right where the State denied him the right to put on the stand a witness whose testimony would have been relevant and material to the defense).

**B. Use of the Criminal Contempt Power**

Morton also argues that criminal contempt should be used sparingly and only where coercive devices less harsh in their effect would be unavailing.

Morton asserts that, "Morton was charged with criminal contempt without any consideration of the alternative of civil contempt as a means to coerce her to testify." *See* Def.'s Rule 29 & 33 Mot. at 14, ECF No. 57. For this reason, Morton argues that her criminal contempt charge violates the "least possible power" rule enunciated in *Shillitani v. United States*, 384 U.S. 364 (1966).

In *Shillitani v. United States*, 384 U.S. 364 (1966), the defendants were subpoenaed to testify before a grand jury. *Id.* at 365-67. The defendants refused to testify. *Id.* The district court granted the defendants immunity and ordered them to answer certain questions. *Id.* at 366. The defendants continued their refusal to testify. *Id.* Without holding jury trials and with no indictments, the district court found the defendants guilty of criminal contempt and sentenced them to two years imprisonment. *Id.* at 366-68. The district court's sentence also included "a purge clause" that granted the defendants "an unqualified right to be released if and when [they] obeyed the order to testify." *Id.* at 366-67.

The defendants appealed, arguing that they were denied their right to indictment and jury trial. *Id.* at 365. The United States Supreme Court held that the contempt proceedings at issue were "clearly . . . civil rather that criminal." *Id.* at 368. The Supreme Court explained that, "[w]here contempt consists of a refusal to obey a court order to testify . . . , the witness may be confined until compliance." *Id.* at 370. That confinement could only last, however, while the contemnor possessed the "ability . . . to comply with the court's order." *Id.* at 371. Because the grand jury has only a limited term, the Supreme Court held that the district court "lacked [the] authority to imprison [a contemnor] for a period longer than the term of the grand jury." *Id.*

The Supreme Court explained that "[t]his limitation accords with the doctrine that a court must exercise 'the least possible power adequate to the end proposed.'" *Id.* In a footnote, the Supreme Court elaborated that "[t]his doctrine further requires that the trial judge first consider the feasibility of coercing testimony through the imposition of civil contempt. The judge should resort to criminal sanctions only after he determines, for good reason, that the civil remedy would be inappropriate." *Id.* at 371 n.9. Significantly, the Supreme Court has since explained that the *Shillitani* admonition carries little weight

where the contemnor is already incarcerated and is therefore

unlikely to respond to a threat of summary civil contempt.

*United States v. Wilson*, 421 U.S. 309, 317 n.9 (1975).

Interpreting *Shillitani*, the Third Circuit has emphasized

that it

> ha[s] not read *Shillitani* as establishing a rule that
> must be followed every time criminal contempt sanctions
> are imposed. The "least possible power" doctrine on
> which the Court relied in *Shillitani* explicitly
> acknowledges that the appropriate sanction depends upon
> the court's reason for initiating contempt proceedings.

*Taberer v. Armstrong World Indus., Inc.*, 954 F.2d 888, 896 (3d

Cir. 1992) (citation omitted). Indeed, "[c]ivil contempt

sanctions are intended to coerce or to compensate; criminal

contempt sanctions to punish. 'Criminal contempt, more

specifically, is reserved for those instances where the court

must vindicate its authority.'" *Id.* (citation omitted) (quoting

*Waste Conversion, Inc. v. Rollins Envir. Servs. (NJ), Inc.*, 893

F.2d 605, 612 (3d Cir. 1990)). Consistent with these purposes,

the Third Circuit concluded:

> [T]he [Supreme] Court's admonition in *Shillitani* was
> intended to apply only when a judge initiates
> contempt proceedings for the purpose of coercing
> compliance with a court order, and not when the
> court's purpose is to punish past violations of its
> orders. The propriety of using criminal contempt
> sanctions thus does not depend upon whether the
> contemnor could be coerced to comply with the
> court's order through civil sanctions; instead, . .
> . the propriety of imposing criminal contempt

> sanctions depends upon whether punishment is
> necessary to vindicate the court's authority.

Id. at 896-97(citations omitted). Additionally, "[a] district
court [is] not obligated to consider expressly civil contempt
prior to the institution of criminal contempt proceedings." *In
re Grand Jury Proceedings Harrisburg Grand Jury 79-1*, 658 F.2d
211, 218 (3d Cir. 1981).

Here, unlike *Shillitani*, Morton was charged with criminal
contempt for the purpose of punishing her repeated violations of
the Court's orders to answer the Government's questions.
Significantly, the proceedings in this matter were not of a
summary nature. Rather, they arose from an information filed by
the Government and subsequent indictment returned by a grand
jury. These charging documents were each dated after the Court
had made its ruling at the conclusion of the August 10, 2017,
revocation hearing. Consequently, the purpose of the contempt
charge in this case could not have been intended to be coercive,
and was instead punitive. In short, Morton's claim that the
Court violated the "least possible power" rule is legally
unsupported.

**C. The Court's Instructions at the Revocation Hearing**

Morton also argues that the Court's warnings during the August 10, 2017, revocation hearing were insufficient.

A defendant "need not specifically have been warned nor indeed be aware that his conduct could be visited with a criminal penalty as opposed to another type of sanction." *United States v. Seale*, 461 F.2d 345, 366 (7th Cir. 1972); *see also United States v. Petito*, 671 F.2d 68, 72 (2d Cir. 1982) ("[T]here is no requirement that a defendant be warned specifically or have notice that his conduct could be visited with a criminal as opposed to a civil sanction."); *United States ex rel. Shell Oil Co. v. Barco Corp.*, 430 F.2d 998, 1001 (8th Cir. 1970) ("It is sufficient for the purpose of due process that the statute or statutes are drawn in such a manner as to notify the actor of the prohibited conduct. . . . It is not, in our view, necessary that the actor, at the time he contemplates the act, be certain as to which of the appropriate sanctions will be invoked.").

In *United States v. Marquardo*, 149 F.3d 36 (1st Cir. 1998), John Marquardo ("Marquardo") was subpoenaed to testify before a grand jury. *Marquardo*, 149 F.3d at 38. Marquardo refused to testify, invoking his Fifth Amendment privilege. *Id.* Thereafter, Marquardo was granted immunity and an order was issued to compel

his testimony. *Id.* Marquardo was again summoned before the grand

jury, but refused to comply with the order compelling his

testimony. *Id.* The same day, at the conclusion of a hearing

conducted by the district court, Marquardo was found to be in

civil contempt. *Id.* Marquardo was committed to federal custody

until such time as he obeyed the district court's order to

testify. *Id.* at 39. Marquardo remained in custody without

purging his contempt for 15 months--until the expiration of the

grand jury's commission. *Id.*

Approximately two years later, a grand jury returned an

indictment charging Marquardo with criminal contempt in

violation of 18 U.S.C. § 401(3) for his failure to obey the

district court's order compelling his testimony. *Id.* Marquardo

moved to dismiss the indictment alleging, among other arguments,

that the prosecution was barred on due process grounds. *Id.* The

district court rejected Marquardo's arguments. *Id.* After a bench

trial, Marquardo was convicted and thereafter sentenced to

fifteen months' imprisonment. *Id.* Marquardo appealed. *Id.*

The First Circuit affirmed Marquardo's conviction. *Id.* at

46. Addressing Marquardo's argument that "he was not given 'fair

warning' that disobedience of the court order to testify exposed

him to potential criminal prosecution and punishment over and

beyond the civil sanctions alluded to" in the district court's

orders compelling his testimony, the First Circuit explained

that

> [t]here is nothing unique about the law of criminal
> contempt that sets it outside the standard established
> for the majority of the criminal law that ignorance of
> its strictures does not excuse noncompliance. There is
> furthermore nothing in the Due Process Clause that
> requires a court to give notice that criminal contempt
> charges may be brought after a witness is held in civil
> contempt.

*Id.* at 43 (1st Cir. 1998)(citations omitted).

Here, this Court met and exceeded any notice requirements

to which Morton would be entitled. Indeed, on nine separate

occasions, the Court warned Morton that if she was found in

criminal contempt for disobeying the Court's order to testify,

that she could face up to 6-months additional jail time if

convicted after a bench trial, or longer if found guilty by a

jury. In light of the record, no reasonable person could

conclude that the maximum penalty faced in this instance was six

months or that Morton would be able to choose to limit her

exposure. Moreover, irrespective of Morton's understanding of

her potential exposure for disobeying the Court's orders to

testify, due process does not require "that the actor, at the

time he contemplates the act, be certain as to which of the

appropriate sanctions will be invoked." *Barco Corp.*, 430 F.2d at

1001.

### D. Prosecutorial Misconduct

Lastly, Morton argues that the United States engaged in prejudicial argument and questioning by (1) referring to her assertion of the Fifth Amendment as evidence of her guilt; (2) arguing Morton breached her plea agreement; and (3) misrepresenting the number of times the Court instructed Morton to answer a question over her invocation of the Fifth Amendment.

"Prosecutorial conduct does not always warrant the granting of a mistrial." *United States v. Zehrbach*, 47 F.3d 1252, 1264 (3d Cir. 1995) (*en banc*). "The test for prosecutorial misconduct is whether the conduct 'so infected the trial with unfairness as to make the resulting conviction a denial of due process' in light of the entire proceeding." *United States v. Morena*, 547 F.3d 191, 194 (3d Cir. 2008) (quoting *Marshall v. Hendricks*, 307 F.3d 36, 67 (3d Cir. 2002)) (internal quotation marks omitted). A trial court must consider a prosecutor's improper remarks in the context of the entire trial, including any curative instructions, the weight of the properly admitted evidence against the defendant, and the nature of the prosecutor's improper actions. *Morena*, 547 F.3d at 193-94.

First, Morton argues that the prosecutor's repeated references to her assertion of the Fifth Amendment were improper. In support of her argument, Morton directs the Court

to *Griffin v. California*, 380 U.S. 609 (1965). In that case,

Eddie Griffin ("Griffin") was tried for murder in the first

degree before a jury in a California court. At that time, the

California Constitution provided that

> ". . . in any criminal case, whether the defendant
> testifies or not, his failure to explain or to deny by
> his testimony any evidence or facts in the case against
> him may be commented upon by the court and by counsel,
> and may be considered by the court or the jury."

*Griffin*, 380 U.S. at 610 n.2. The evidence at trial revealed

that Griffin had been seen with the deceased on the evening of

her death. Moreover, the evidence placed him with the deceased

in the alley where her body was found. After Griffin did not

testify at trial, the prosecutor commented repeatedly on his

failure to deny or explain what had happened.[4] Griffin was

---

[4] The prosecutor made the following statements:

> "The defendant certainly knows whether Essie Mae had this beat up
> appearance at the time he left her apartment and went down the alley
> with her. ["]

> "What kind of a man is it that would want to have sex with a woman
> that beat up if she was beat up at the time he left? ["]

> "He would know that. He would know how she got down the alley. He
> would know how the blood got on the bottom of the concrete steps.
> He would know how long he was with her in that box. He would know
> how her wig got off. He would know whether he beat her or mistreated
> her. He would know whether he walked away from that place cool as
> a cucumber when he saw Mr. Villasenor because he was conscious of
> his own guilt and wanted to get away from that damaged or injured
> woman. ["]

> "These things he has not seen fit to take the stand and deny or
> explain.["]

> "And in the whole world, if anybody would know, this defendant would
> know.

convicted and the death penalty was imposed. After the

California Supreme Court affirmed his conviction and sentence,

Griffin appealed.

The Supreme Court reversed, holding that "the Fifth

Amendment, in its direct application to the Federal Government,

and in its bearing on the States by reason of the Fourteenth

Amendment, forbids either comment by the prosecution on the

accused's silence or instructions by the court that such silence

is evidence of guilt." *Id.* at 615.

Morton's reliance on *Griffin* and its progeny, is misplaced.

Because a defendant's pre- and post-*Miranda* silence may not be

used as evidence of her guilt, *Griffin* and its progeny condemn

prosecutorial comment on a defendant's proper invocation of the

Fifth Amendment. Significantly, at the August 10, 2017,

revocation hearing, this Court found that Morton's invocation of

the Fifth Amendment was invalid in a number of instances. As a

result, the Court ordered Morton to answer. Morton refused.

Subsequently, the Government charged Morton with criminal

contempt for her refusal to obey this Court's orders to answer.

The Court is unaware of any authority that prohibits a

---

"[The Decedent] is dead, she can't tell you her side of the story.
The defendant won't."

*Griffin*, 380 U.S. at 610-11.

prosecutor from describing this sequence of events in the subsequent trial for criminal contempt based on the defendant's improper refusal to testify. *Cf. United States v. Rice*, 52 F.3d 843, 846 (10th Cir. 1995) (explaining that, where the defendant attempted to invalidly invoke his Fifth Amendment privilege during a prior administrative proceeding and civil enforcement action, the argument that the government could not reference those invalid invocations in his criminal trial is "without a rational basis"). As such, the Court does not find that the references by the prosecutor to Morton's improper invocations of the Fifth Amendment at the August 10, 2017, revocation hearing was improper.

Second, the record does not support Morton's contention that she was prejudiced by any improper reference by the United States to Morton's plea agreement in a separate criminal case. In the two instances in which the United States referred to Morton's plea agreement in a separate case, the Court sustained Morton's objections. *See* Trial Tr. at 86:21-88:4, 237:21-23, April 30, 2018, ECF No. 52. "The [law] presumes that jurors, conscious of the gravity of their task, attend closely the particular language of the trial court's instructions in a criminal case and strive to understand, make sense of, and follow the instructions given them." *United States v. Hernandez*,

176 F.3d 719, 734 (3d Cir. 1999) (alteration in original)

(quoting *Francis v. Franklin*, 471 U.S. 307, 324 n.9 (1985))

(internal quotations marks omitted).

Finally, Morton was not prejudiced by any

misrepresentations regarding the number of times the Court

instructed Morton to answer a question over her invocation of

the Fifth Amendment. Morton objects to the Government's

representation that the Court instructed Morton to answer a

question over her invocation of the Fifth Amendment on either

17, 27, or 28 occasions. The transcript of the August 10, 2017,

revocation hearing reveals that the Court ordered Morton to

answer the questions of the United States and warned Morton that

a refusal to do so could result in her being charged with

criminal contempt on at least nine occasions. *See* Revocation of

Supervised Release Hr'g Tr. 39:7-40:2, *United States v. Fagan*,

Criminal No. 5-76 (D.V.I. Feb. 12, 2019), ECF No. 1149; *see also

id.* at 17:23-18:16; 21:11-22; 22:16-23:15; 30:15-31:2; 31:23-

32:9; 34:25-35:10; 35:24-36:9; 37:25-38:12. That transcript was

admitted into evidence. As such, the jury was able to determine

for itself the exact number of times that Morton refused to

testify after the Court ordered her to do so.[5]

---

[5] Moreover, the Court instructed the jury that "[i]f any of the attorneys
stated a version of the facts that does not square with your own

## IV.    CONCLUSION

The Court finds that neither a judgment of acquittal nor a new trial are warranted in this case.

The premised considered, it is hereby

**ORDERED** that Morton's motion for a judgment of acquittal, or alternately a new trial, ECF No. 57, is **DENIED**.

S\_____
                    **Curtis V. Gómez**
                    **District Judge**

---

recollections, you are to disregard that version in favor of your own recollections." Jury Instructions at 19, ECF No. 43.